E-FILED
Tuesday, 22 May, 2012  02:11:12 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| BETTY J. DEMONT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cv-04031-SLD-JAG |
| | ) | |
| DAN BEBBER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

ORDER & OPINION

I.       INTRODUCTION

In the spring of 2010, Plaintiff Betty J. DeMont ("DeMont") filed a complaint in Illinois state court against Defendant Dan Bebber ("Bebber") alleging two causes of action: (1) a constitutional violation under 42 U.S.C. § 1983 ("§ 1983") and (2) the state law claim of fraudulent misrepresentation.  On March 29, 2010, Bebber removed the case to this Court pursuant to 28 U.S.C. § 1446 and 28 U.S.C. § 93.  On September 15, 2011, after the completion of discovery, DeMont moved for summary judgment on both of her counts.  Bebber filed a cross-motion on October 14, 2011.  Both motions are presently before the Court.

For the reasons set forth below, the Court finds that qualified immunity protects Bebber from DeMont's § 1983 claim.  The Court also finds that sovereign immunity bars DeMont's fraudulent misrepresentation claim.  The Court therefore grants summary judgment in Bebber's favor on both counts.

1

II.      BACKGROUND

Betty DeMont's husband, Dwight, was a disabled U.S. Army veteran who died in 2005 of pneumonia. Dwight DeMont's terminal pneumonia resulted at least partially from the diabetes he developed as a result of his exposure to Agent Orange in the Vietnam War. (Compl. at 1, ECF No. 1.) On February 7, 2005, about two weeks after Dwight DeMont's death, DeMont received a letter from Defendant Dan Bebber, a Veteran Service Officer ("VSO") with the Illinois Department of Veteran's Affairs ("VA") in Rock Island, Illinois. (DeMont's Mot. at 1, ECF No. 18.) The letter invited DeMont to contact the Rock Island VA office to discuss her potential entitlement to VA survivor benefits. (DeMont's Mot. Ex. 2.)

DeMont alleges that on February 10, 2005, she visited Bebber's office and presented him with a copy of her husband's death certificate. (Compl. at 2.) DeMont's sister, Marjorie Clevenger, claims to have accompanied DeMont to this meeting, but does not recall many details. Nevertheless, both Clevenger and DeMont assert that the office was relatively crowded and, consistent with the fact that Bebber is the only employee at the Rock Island VA office, assert that Bebber was the only one working that day. (Bebber's Resp. at 10, ECF No. 20.) For his part, Bebber has no recollection of the alleged meeting. (DeMont's Mot. at 6.)

Bebber's job duties with the VA include evaluating benefit eligibility and helping claimants maximize the amount they are entitled to receive. (Bebber's Resp. ¶ 25.) DeMont alleges that during the February 10, 2005 meeting she asked Bebber about her eligibility for survivor benefits. (DeMont's Compl. at 6.) DeMont claims that Bebber told her she was not eligible for such benefits. (DeMont's Compl. at 6.) As such, Bebber did not fill out and process a benefits application for DeMont, nor did she ask Bebber to do so. (DeMont's Mot. at 5.)

While no application was filed, DeMont was in fact eligible for survivor benefits.  For a survivor to obtain benefits, it must be shown that the veteran's death was service-connected. (DeMont's Mot. at 9.)  A U.S. Department of Veterans Affairs policy lists certain diseases that are presumed to be service-connected if they are developed by a Vietnam veteran exposed to Agent Orange, as Dwight DeMont was.  (*Id.*)  In this case, DeMont's entitlement to benefits arose as a result of Dwight DeMont's diabetes, which was one of the presumptive diseases enumerated in the Department of Veterans Affairs policy.  (*Id.*)

DeMont learned of her entitlement to survivor benefits due to Dwight DeMont's diabetes in the spring of 2008.  (Compl. ¶ 8.)  With the assistance of Bebber, DeMont applied for and received her survivor benefits at that time.  (Bebber's Resp. at 25.)

DeMont now seeks to recover from Bebber the benefits she did not receive from 2005 to 2008.  In support, DeMont alleges that Bebber had an affirmative duty to apply for benefits on her behalf after she inquired about her eligibility and presented him with a death certificate indicating that diabetes was a secondary cause of her husband's death.  (DeMont's Mot. at 20-24.)  According to DeMont, Bebber breached this alleged duty by ignoring the circumstances of Dwight DeMont's death that would indicate it was service-connected, wrongly telling her she did not qualify for survivor benefits, and by not applying for benefits on her behalf.  DeMont alleges that these shortcomings amount to an intentional misrepresentation of the truth of her benefit eligibility, and that in doing so, Bebber violated the U.S. Constitution and Illinois state law by effectively depriving her of those benefits.

III.     DISCUSSION

A.  Summary Judgment Standard

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc*., 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted).    It is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact presents a "genuine issue" if it is "one on which a reasonable factfinder could find for the nonmoving party."  *Patel v. Allstate Ins. Co.,* 105 F.3d 365, 370 (7th Cir. 1997).  An issue of fact is "material" if it is outcome determinative.  *Id.*  There can be no "genuine issue as to any material fact" when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Where there is a genuine dispute, the Court draws all reasonable inferences in a light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677 (2009).

B.  Section 1983 Claim

The Court begins with the § 1983 claim because it is the only federal claim over which the Court has original jurisdiction and will impact resolution of the pendant state law claim.

An injured person is authorized under 42 U.S.C. § 1983 to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights. A plaintiff must establish two elements to make out a prima facie case under § 1983: (1) the deprivation of a federal right and (2) the person who deprived the plaintiff of that right acted

4

under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  When making a § 1983 claim based on a violation of the Fourteenth Amendment's procedural or substantive due process components, the plaintiff must establish that the individual intentionally or deliberately caused a deprivation of life, liberty, or property.  *Daniels v. Williams*, 474 U.S. 328, 330-331 (1986). Negligence does not suffice.  *Id.*; *see also Davidson v. Cannon*, 474 U.S. 344, 346-348 (1986).

Here, the parties dispute whether Bebber's error regarding DeMont's eligibility for benefits is a cognizable claim under § 1983.  DeMont contends that Bebber violated her constitutional rights "pursuant to the First and Fourteenth Amendments to the United States Constitution"[1] because he "knew that [she] had a property interest in the military pension benefits available to her" but nevertheless "denied" her from obtaining them.[2]  Bebber counters by arguing that he has qualified immunity from liability under § 1983 because his alleged conduct did not violate DeMont's clearly established constitutional rights.

The Court's resolution of DeMont's § 1983 claim focuses on the issue of qualified immunity.  Qualified immunity shields "government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware."  *Siliven v. Indiana Dept. of Child Services,* 635 F.3d

---

[1] Based on the pleadings before the Court, it is unclear how Bebber violated, or even could have violated, DeMont's First Amendment rights.  The First Amendment prohibits the making of laws establishing religion, impeding the free exercise of religion, and abridging the freedom of speech, right to assemble, or right to petition the government.  DeMont does not allege that Bebber did any of these, and in any event, he was in no position to do so as a VA administrator. The First Amendment component of DeMont's claim is meritless.

[2] It is worth noting that Bebber did not technically "deny" DeMont benefits.  A determination regarding entitlement to benefits is conducted exclusively by the U.S. Department of Veteran's Affairs.  DeMont instead suggests that Bebber "denied" DeMont's benefits because Bebber failed to recognize, or intentionally ignored, that DeMont qualified for benefits, erroneously told her she did not qualify, and in spite of qualifying did not submit an application on her behalf. This raises a number of questions about whether DeMont in fact suffered a deprivation, but the Court need not make such a determination because qualified immunity bars the action and, in any event, immunities were the only § 1983 issues raised by Bebber in briefings.

5

921, 925 (7th Cir. 2011) (citing *Pearson v. Callahan,* 555 U.S. 223, 230 (2009)).  When making

a qualified immunity determination, courts consider (1) whether the plaintiff's allegations show

that the defendant violated a constitutional right, and (2) whether that right was "clearly

established" at the time of the defendant's conduct.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct.

2151, 150 L.Ed.2d 272 (2001).   A negative answer to either prong will decide the matter.

*Montville v. Lewis,* 87 F.3d 900, 902 (7th Cir. 1996).  Although qualified immunity is a defense,

the plaintiff bears the burden of defeating it by proving the two prongs.  *Estate of Escobedo v.*

*Bender,* 600 F.3d 770, 779 (7th Cir. 2010), *cert. denied sub nom. Martin v. Hanic,* 131 S.Ct. 463,

178 L.Ed.2d 288 (2010).

A constitutional right is "clearly established" when its contours are "sufficiently clear that

a reasonable official would understand that what he is doing violates that right."   *Estate of*

*Escobedo*, 600 F.3d at 779, quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153

L.Ed.2d 666 (2002).   The plaintiff need not identify a case "directly on point, but existing

precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v.*

*al-Kidd*, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011).   Closely analogous cases decided

before the defendant acted are required to find that a constitutional right is clearly established.

*Powers v. Lightner,* 820 F.2d 818, 821 (7th Cir. 1987).

Before addressing the constitutional questions, however, DeMont first asserts that Bebber

was not performing discretionary functions in his job and thus falls entirely outside the scope of

the immunity.   But whether Bebber's job duties were discretionary or ministerial is immaterial.

Qualified immunity is not restricted to government officials who perform discretionary

functions.   While it is true that some Seventh Circuit cases suggest there is a distinction, those

cases did not decide the issue directly.  *See, e.g*., *Wheeler v. Lawson*, 539 F.3d 629 (7th Cir.

6

2008) ("[t]he doctrine of qualified immunity shields from liability public officials who perform discretionary duties"); *Billings v. Madison Metro. Sch. Dist*., 259 F.3d 807, 816 (7th Cir. 2001) ("[q]ualified immunity is available only to officials with discretionary or policy-making authority who are acting in their official capacities").   Conversely, the court in *Coleman v. Frantz* directly addressed the issue and found no support for the discretionary-ministerial distinction in the context of § 1983 immunity.   259 F.3d 807, 816 (7th Cir. 2001).   The *Frantz* decision highlighted the fact that the Supreme Court "cast doubt upon the relevance of this common law doctrine" in § 1983 cases "and upon the wisdom of utilizing the distinction as a basis for determining the existence of an immunity from § 1983 liability."   *Id*.   Furthermore, the court found it to be against public policy "to engage in a case by case determination of Section 1983 immunity based upon the ministerial versus discretionary nature of the particular official act challenged" because the distinction itself is unclear and would "do little to forward the purposes of the immunity."   *Id*.   Instead, the court held that a lower level public employee should be required to demonstrate that his actions were undertaken "pursuant to the performance of his duties and within the scope of his authority."   *Id*.

It cannot reasonably be disputed that Bebber's job compelled him to make determinations about whether potential claimants might be eligible for benefits.   According to the class specification document of a Veteran Service Officer, VSOs are expected to "advise and counsel" dependents on VA benefits and "analyze and interpret" medical records in doing so.   (*See* Bebber's Mot., Ex. 3 at 121-123.)   It is evident that advising DeMont about her eligibility, however wrong the advice may have been, was undertaken pursuant to the performance of these job duties and within the scope of his stated authority.   The Court is therefore satisfied that

Bebber meets the standard set forth in *Frantz* and cannot be denied the defense of qualified immunity.

Turning now to the constitutional issues raised, DeMont cannot meet her burden of proving that she was deprived of a clearly established constitutional right by Bebber's alleged conduct. DeMont's initial assertion is that she had a pre-application constitutionally protected property interest in the survivor benefits for which she was eligible. This assertion fails right out of the gate because neither the Supreme Court nor the Seventh Circuit has decided whether the right to apply for benefits is a constitutional right. Consequently, DeMont relies on non-analogous cases decided by non-controlling authorities. For example, DeMont cites the Federal Circuit case *Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009). In *Cushman*, the court held that veteran applicants for disability benefits possess a protected property interest in those benefits. 576 F.3d at 1298. Notably, the court acknowledged the ruling was a case of first impression. *Id.* ("The Supreme Court has not, however, resolved the specific question of whether applicants for benefits, who have not yet been adjudicated as entitled to them, possess a property interest in those benefits."). This can hardly be considered to have created a constitutional right so "clearly established" as to place the constitutional question beyond debate, to say nothing of the fact that *Cushman* was decided four years *after* Bebber's alleged conduct.

DeMont attempts to overcome the lack of precedent in support of her allegations that Bebber deprived her of a clearly established constitutional right by arguing that Bebber's conduct was "so obvious[ly]" a violation of her clearly established constitutional rights that he should have known his behavior would implicate the Constitution. While assertions of the violation of a constitutional right can be "so obvious" that they are not reasonably disputed, *see, e.g., Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000) ("[a] violation may be

clearly established if the violation is so obvious that a reasonable state actor would know that what they are doing violates the Constitution"), that is not the case here.

Cases such as *Brokaw* support the contention that certain rights exist without binding precedent because the right's existence is so clear "that no one thought it worthwhile to litigate the issue." *Brokaw*, 235 F.3d at 1022-1024 (finding that the unjustified removal of a six-year-old from his parents based on the family's religion violated a constitutional right despite no closely analogous case).  Here, DeMont tries to establish that it was "so obvious" that Bebber violated DeMont's constitutional rights by asserting that individuals in Bebber's position, when requested, "always" submit applications for benefits on behalf of potential claimants.  But, even if such an assertion were true, the Court could not find that erroneously informing an applicant that she did not qualify for benefits amounts to a violation "so severe that a reasonable person would have understood" that he was violating someone's constitutional rights.  *Brokaw*, 235 F.3d at 1023.  Nor can it be said that departing from an unofficial practice of "always" submitting benefits applications should somehow inform Bebber that his conduct implicated the Constitution.[3]

---

[3] The Court further notes that DeMont's reference to Bebber's purported "admission" that he "always" submits applications is misleading.  DeMont frequently quotes Bebber's deposition testimony where he stated "if [potential claimants] come in and want to put in for something, we just put them in for it," and attempts to parlay the testimony into an admission that he should have "put in" DeMont's application.  However, DeMont does not allege that she told Bebber she wanted him to submit an application on her behalf.  The evidence demonstrates only that she went to Bebber to *inquire* about her eligibility, which would reasonably invite a response, correct or not.  The distinction between inquiring as to one's eligibility and directly requesting the formal submission of an application also undermines the relevance of DeMont's references to 38 C.F.R. § 3.150, which requires that "*upon request*…by any person applying for benefits…the appropriate application form will be furnished." (emphasis added.)

Finally, DeMont asserts that Bebber violated the "rules and regulations" of the VA by not applying for survivor benefits on her behalf, thereby leaving Bebber unentitled to qualified immunity.  This is unfounded.  The Court can only speculate as to how the violation of VA rules is tantamount to the violation of a constitutional right because DeMont provides no explanation supporting this contention.  Instead, DeMont only cites *LaFine v. County of Cook*, No. 98-C-195, 2001 U.S. Dist. LEXIS 25187 (N.D. Ill. May 24, 2001).  There, the court identified an important distinction—that a § 1983 claim requires "the violation of a federal *right*, not merely the violation of federal *law*."  *Id.* at *2 (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)).  As such, "a plaintiff must show that the particular federal statute at issue creates specific rights."  *Id.* (citing *Marie O. v. Edgar,* 131 F.3d 610, 618 (7th Cir. 1997)).  With this legal standard in mind, the plaintiff in *LaFine* provided several reasons justifying a finding that a series of federal statutes and implementing regulations related to a child support collection program created a clearly established individual right.  By contrast, DeMont fails to identify the specific "rules and regulations" that create a federal right in this instance, much less provide an explanation for how they do create such a right.[4]

DeMont also repeatedly emphasizes throughout her briefs that Bebber acknowledged he had a "duty" to "always" apply for benefits on behalf of potential claimants when they ask for it, "no matter what."  (*See* DeMont's Resp. at 21-23.)  But this does not, by itself, mean that the violation of such a perceived professional duty would be a *constitutional* violation.  It is

---

[4]  The Court is skeptical that DeMont could identify any specific rules or regulations that she repeatedly refers to in her briefing since the only "rules and regulations" presented to the Court in this matter are cited in other pleadings, and are either inapplicable to Bebber, or primarily informal practices that Bebber and his colleagues observe.  They are not the sort of formal statutes or implementing regulations that could support the creation of a federal right.

DeMont's burden to establish an underlying constitutional right and she has simply failed to show how Bebber's beliefs about his duty, even if true, necessarily implicate the Constitution.

In sum, however arguable it may be that a person's pre-application eligibility for VA survivor benefits should be considered a constitutionally protected property right, no such right was "clearly established" at the time Bebber allegedly misinformed DeMont about her eligibility for benefits. Bebber is therefore entitled to qualified immunity, and the Court grants summary judgment in his favor on Count II.

### C. Count I - State Law Claim

#### 1. Supplemental Jurisdiction

Having resolved the only federal issue, the Court now turns to DeMont's state law claim. This Court's jurisdiction over the state law claim arises under 28 U.S.C. § 1367(a) because it plainly forms part of the same Article III case or controversy as DeMont's 28 U.S.C. § 1983 claim over which the Court had original jurisdiction. Whether the Court should decline to exercise supplemental jurisdiction under § 1367(c) is discretionary, determined by weighing considerations of "judicial economy, convenience, fairness, and comity." *Timm v. Mead Corporation*, 32 F.3d 273, 276 (7th Cir. 1994); *see also Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 619 n. 7, 98 L. Ed. 2d 720 (1988). "That the jurisdictional hook is eliminated before trial at best only preliminarily informs the balance," since the court should also consider the nature of the claim at issue, "[its] ease of resolution, and the actual, and avoidable, expenditure of judicial resources." *Timm*, 32 F.3d at 277.

The "jurisdictional hook" in this case is the § 1983 claim that has now been eliminated. However, the parties have completed discovery and have fully briefed and argued the issues. Considering factors such as judicial convenience and fairness, the Court sees no reason to delay

resolution of the state law claim.  It is contrary to principles of judicial economy to burden the state court system by requiring the parties to litigate an unspectacular state law issue anew in state court.  *See id*.  Moreover, it is unfair to the parties to remand the case to state court at this late stage, especially in light of the nature of the claim at issue and its relative ease of resolution. Therefore, the Court will exercise its jurisdiction to decide DeMont's state law claim.

2.   Sovereign Immunity

Bebber argues that sovereign immunity bars DeMont's common law fraudulent misrepresentation claim because the duty Bebber allegedly breached is imposed solely by virtue of his employment with the state.[5]  The Court agrees.  In Illinois, sovereign immunity attaches when a claim "brought nominally against a State employee in his individual capacity…could operate to control the actions of the State or subject it to liability."  *Cortright v. Doyle*, 898 N.E.2d 1153, 1158 (Ill. App. Ct. 2008).  The Illinois Supreme Court has established a three-part test to determine whether an action against a state employee is really one against the state: (1) there are no allegations the employee acted beyond the scope of his authority through wrongful conduct; (2) the alleged duty was not owed by the employee independently of his employment; and (3) the alleged wrongful conduct involves matters within the employee's "normal and

---

[5] In addition to fraudulent misrepresentation, DeMont raised several new claims in the summary judgment briefings, including negligence and willful and wanton misconduct.  But summary judgment is not the stage for a party to raise new claims, and it is unfair to the defendant to argue a new cause of action this late in the proceedings. *See, e.g., Johnson v. Cypress Hill*, 641 F.3d 867, 873 (7th Cir. 2011) (plaintiff's request to change his claim on the eve of summary judgment "is exactly the sort of switcheroo we have counseled against").  DeMont simply made no allegation in her Complaint about willful and wanton misconduct, aggravated negligence, or mere negligence, nor did she move to amend her Complaint at any point during the proceedings. There is no reason why these claims could not have been brought when the Complaint was filed, and bringing them now evidences undue delay at best.  DeMont has therefore waived these claims by failing to raise them in a timely manner.  *See Warren v. Solo Cup Co*., 516 F.3d 627, 629 (7th Cir. 2008).  Accordingly, the merits of DeMont's new allegations will not be addressed.

official functions." *Doyle,* 898 N.E.2d at 1158; *see also Jinkins v. Lee*, 807 N.E.2d 411, 418 (Ill. 2004); *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990).

Applying the three-part test, the Court finds that DeMont's fraudulent misrepresentation claim is barred by sovereign immunity.  Regarding the first prong, although DeMont makes the conclusory statement that Bebber acted beyond the scope of his authority, the facts she supplies do not bear this out.  DeMont relies on the allegation that misinforming her about her eligibility and failing to apply for survivor benefits on her behalf is proof that Bebber acted outside the scope of his authority.  But evaluating potential claims and providing counsel based on the information before him are precisely within Bebber's stated job duties.  For instance, the class specification document outlining the job duties of a VSO includes: "[i]nterviews, advises, and counsels…veterans, their dependents and/or survivors on Veteran's Administration benefits…" and "[m]akes independent decisions relative to complex issues and claims."  (Bebber's Mot., Ex. 3 at 121-123.)  The skills required include the "ability to analyze and interpret…records in terms of establishing entitlement to [VA] benefits."  *Id.*  That Bebber may have evaluated wrongly, or counseled poorly, does not remove the alleged statements and actions from the scope of his authority.

As to the second prong, DeMont alleges in her complaint that Bebber owed her a *professional* duty to inform her about her eligibility for benefits, as opposed to a duty independent of his job.  (Compl. at 2.)  Regardless of whether such a legal duty actually exists, it is a duty patently unique to Bebber's employment with the state, as DeMont herself acknowledged.  DeMont also argues that Bebber owed her a duty "not to make fraudulent misrepresentations," which exists independent of his state employment.  But in *Wozniak v. Conry*, the Illinois Appellate Court rejected the argument that because common law duties are

13

applicable to all citizens, a common law suit against a state employee cannot effectively be one against the state.  679 N.E.2d 1255, 1258 (Ill. App. Ct. 1997).  That court, citing *Currie v. Lao*, 592 N.E.2d 977 (Ill. 1992), emphasized that a suit against a state employee could still be one against the state if "the relief sought would limit the ability of the employee to engage in lawful activity on behalf of the state" or would otherwise control the actions of the state.  *Wozniak*, 679 N.E.2d at 1258.  The court also noted that if a suit threatens to control the action of the state, "it does not matter if…the plaintiff alleges the [supposedly false] statements were knowingly false." *Id*.

In this case, to allow DeMont's suit against Bebber in his individual capacity would limit his ability to engage in lawful activity on behalf of the state of Illinois—namely, to advise and assist veterans and their families about benefits to which they may be entitled.  Bebber's alleged conduct relates precisely to the duties assigned to him by the state.  That he apparently erred does not change this.  A judgment against Bebber would thus directly influence his ability to perform his job of advising potential claimants on behalf of the Illinois VA.  It would also limit his ability to provide counsel if every error he made would subject him to civil liability.  Indeed, it would render any advisory role meaningless.

Finally, as is evident in the first and second prong analyses, the matters about which DeMont complains were within the normal functions of Bebber's job as a VSO.  As noted throughout this Order, Bebber's job functions required him to advise and counsel potential claimants, which is exactly the conduct about which DeMont complains.  The third prong is satisfied.  The Court thus finds that sovereign immunity bars DeMont's state law claim according to the standards identified by courts in Illinois, making summary judgment proper.

IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Dan Bebber's Motion for Summary Judgment [22] on DeMont's two claims and DENIES Plaintiff Betty J. DeMont's Motion [18] on those counts.  This matter is now TERMINATED.

Entered this 22nd day of May, 2012.

s/ Sara Darrow
_____
SARA DARROW
UNITED STATES DISTRICT JUDGE
